# EXHIBIT A

مجموعة الوصل الدولية محامون ومستشارون قانونيون
*Alwasel International Group Advocates & Legal Consultants*

## Before Honorable Dubai Court of First Instance

## Case No. 1170 of 2011 " Plenary Civil ".

**Plaintiff:** **Star Reefers Shipowning Inc**, a Company based outside UAE in Cayman Islands, Agland House, Sawis Church Street, George Town, Grand Cayman, KYI – 1104, Cayman Islands, P.O. Box no 309, its selected address within the country is Alwasl International Group Advocates and Legal Consultants based in the Emirate of Dubai, Bur Dubai, Sheikh Zayed Street, Al Hawai Tower, Floor no 10, Tel: 04/3212555, Fax: 04/3210523, P.O. Box 75771 Dubai.

Represented by Advocates/ Abdul Aziz Abdullah Mohammed Abdullah Al Hamadi, Abdurrahman Abdullah Saif Salim Khamis Al Nakbi, Mahmoud Hajaj Azab Abu Jridah, Rashid Saeed Rashid Ali.

**Defendant: Goltens Company Limited** "Dubai Branch" based in the Emirate of Dubai, Bur Dubai, Umm Hurair First, **Al Garhoud** Street, **Jadaf Dubai**, within Jadaf Dubai, Tel: 04/3241642, Fax: 04/3240370, P.O. Box no 2811, Dubai, (**a detailed map of the Defendant Company location is attached**).

*Alwasel International Group Advocates & Legal Consultants*

## Statement of Claim

The Plaintiff is a foreign Company incorporated under laws of Cayman Islands and based in Cayman Islands, engaged in Navigation and shipping and has many naval vessels to perform its commercial activities including a **three vessels** as follows:

1. M. V. Nelson Star Vessel, a refrigerated cargo ship with full capacity of 8,665 T and hoist Bermuda flag, the number of the vessel in Lloyd's Register is 8917558.
2. M. V Timaru Star Vessel, with full capacity of 8,665 T and hoist Bermuda flag, the number of the vessel in Lloyd's Register is 8917596.
3. M. V Dunedin Star Vessel, a refrigerated cargo ship with full capacity of 8,665 T and hoist Bermuda flag, the number of the vessel in Lloyd's Register is 9038945.

**((Vide Exhibits Nos. "1" & "2" & "3" in the attached Plaintiff's docket of exhibits))**

\* the Defendant, Goltens Company Limited, Dubai Branch, a Company specialized in repairing and maintaining vessels, having the license no. 130309 issued by Department of Economic Development in the Emirate of Dubai and engaging in repairing ships and boats, fixing and maintaining and operating heavy machines and equipments, and repairing and maintaining maritime machines and equipments.

\* the Plaintiff Company, the owner of three ships mentioned in the details above performed a maintenance for these three ships owned by the Defendant Company, being a Company specialized in repairing, maintaining and operating the ships in addition to being specialized in repairing and maintaining all maritime machines and equipments. The works of maintenance performed by

the Defendant Company for the three ships owned by the Plaintiff as described below:

**First:** the works of maintenance done by the Defendant Company to M. V Nelson Star vessel owned by the Plaintiff are as follows

1- Cage structures of the exhaust valve of the vessel's main engine.
2- The exhaust valve of the vessel's main engine.
3- Exhaust valves PC2.
4- Exhaust valve seat.
5- Exhaust valves and the inlet valves of the main engine.
6- Fuel valves of the vessel's main engine, and inlet and exhaust valves.
7- Main engine's exhaust valves.
8- Exhaust valves and inlet valves of the engine.
9- Engine's exhaust valves and inlet valves.
10- Main engine's exhaust valves and the cylinder head.

**Second:** the works of maintenance done by the Defendant Company to M. V Timaru Star vessel owned by the Plaintiff are as follows:

1- The cage structure group of the vessel's main engine fuel exhaust valves and the main engine inlet valve.
2- The inlet valve and exhaust valve and the fuel injection nozzles.
3- Exhaust valve.
4- Inlet valve NO2.
5- Exhaust valve PC2.
6- Inlet valves.

**Third:** the works of maintenance done by the Defendant Company to M. V Dunedin Star vessel owned by the Plaintiff are as follows

1- The cage structure group of the vessel's main engine fuel valves.

مجموعة الوصل الدولية محامون ومستشارون قانونيون
*Alwasel International Group Advocates & Legal Consultants*

2- Exhaust valve.

3- A pair of fuel injection valves, exhaust valve and injection nozzle.

4- Exhaust valve and fuel injection valve.

5- The main engine's exhaust valve, inlet valve and PP component of the fuel.

6- Exhaust valve PC4, piston 1 and monoblock cylinder PC1.

7- The main engine exhaust valves and inlet valves.

8- Main engine exhaust valves NOS4.

9- Inlet valve PC2.

**((Vide Exhibits Nos. "4" & "5" in the attached Plaintiff's docket of exhibits))**

\* After the Defendant had performed the maintenance works for the three vessels and received the due consideration. Such works included the maintenance of the engines and rehabilitation and preparation of the valves and other parts for all the vessels suffered damages in their engines due to the maintenance works performed by the Defendant as follows:

**First:** M. V Nelson Star vessel suffered after the maintenance works performed by the Defendant as a result of the damages in its main engine and its turbine charger as the ship had been on a voyage from Davao, Philippines, to UAE in December 2008. During the voyage, its engine suffered damage forcing it to change its destination to Singapore. It stopped there and checked the damages it suffered which were crushes and cracks in the piston-cylinder no. 6 of the main engine. The valves and rotary valves shafts were broken, the head of the cylinder no. 6 was crushed substantially, the cylinder fire ring was crushed, and an inlet valve and an exhaust valve were broken in the channel of rotating columns. As regards the turbine charger, the rotating wheel blades therein were belt and cracked for 30mm as of the edges of the blades by the strange

objects from the broken valves and curvature of the blades. The nozzles rings were distorted due to of the existence of foreign objects.

\* After the damaged vessel anchored in Singapore on 18/12/2008, a specialized maritime Company, **Associated Risks and Casualty Management P.L**, was delegated and appointed to carry out an inspection of the ship and to verify the damages to the engine. This specialized Company conducted the required technical inspections and prepared the specialized maritime technical report, the results of which confirmed the aforementioned damages.

\* As the specialized maritime technical report prepared on 22/1/2009 by "Associated Risks and Casualty Management P.L" confirmed that the vessel engine suffered the aforementioned damages and that an inspection, check **and verification to ensure that the last maintenance of the engine and all valves of the engine's cylinder head were served and maintained comprehensively on land by Goltens Dubai, ((the Defendant Company in the legal action at hand)).**

**((Vide exhibit no. (6) of the Plaintiff's attached docket of exhibit))**

**Second:** M. V Timaru Star vessel suffered after The works of maintenance had been performed and conducted by the Defendant Company for the damages to its main engine and the turbine charger as the vessel had been on a voyage from Bushehr in Iran to Davao, Philippines in March, 2010. The vessel went straight also to Singapore for stopping and checking.

\* A specialized maritime Company, **Associated Risks and Casualty Management P.L**, was delegated and appointed to carry out an inspection of the ship and to verify the damages to the engine. This specialized Company conducted the required technical inspections and prepared the specialized maritime technical report on 6/4/2010, the results of which confirmed that the engine cylinder suffered damages, the cylinder head was cracked, vibrating screws, the fuel pump screws were broken, as well as the damages afflicted with the piston upper part, the ground fire ring, the screws of the exhaust valve, both inlet valves screws, security valve and operating valve. In addition,

there had been shrapnel from the piston and the broken valves in the exhaust tube were damaged. Also, the turbine charger was also damaged. It has been also found that the rings of the nozzle and the rotating turbine wheel were also damaged due to the broken parts.

The maritime technical report confirmed that during the supply of spare parts in 2009. The vessel was provided with a parallel piston upper part which is unsuitable for use with the current ground fire ring. The difference between the piston upper part in the original design and that developed design is simple, 1 mm in terms of diameter, which may not be observed by abstract eye. Consequently, this technical report confirmed that " the vessel's engine and turbine charger suffered the aforementioned damages.

All the maintenance works for the vessel's engine and turbine charger were carried out and performed by the Defendant Company, Goltens Company Limited, "Dubai Branch".

**(Vide Exhibit no. "7" of the Plaintiff's attached docket of exhibits"**

**Third:** After the performance of the maintenance works by the Defendant Company, M. V Dunedin Star vessel suffered damages in its main engine and turbine charger as a main engine of the vessel on 8/4/2010 suffered failure at the location of the cylinder no. "6" during a maneuver in Dammam port in KSA. It also suffered, prior to this damage, a failure in the engine on 12/9/2009 during a voyage from Davao, Philippines, to Khalid port in the Emirate of Sharjah in UAE. The vessel's engine was maintained and returned to service and amended valves were installed to the engine's cylinder head, cylinder no. "6". This cylinder had been a part of a package of valves which underwent a process of reformatting by Goltens in Dubai, i.e. **((the Defendant Company in the legal action at hand))**.

مجموعة الوصل الدولية محامون ومستشارون قانونيون
Alwasl International Group Advocates & Legal Consultants

\* A specialized technical maritime Company, named Burgoynes consulting scientists and engineers, "Singapore" to carry out the metal checking inspection and to test the damaged valves in the sixth cylinder in the main engine of the vessel after the engine failure had occurred on 8/ 4/ 2010. The damages suffered by the engine were verified. This specialized technical maritime Company conducted the required technical inspections and prepared the specialized maritime technical report on 30/ 6/ 2010, the results of which conformed that the cylinder no. "6" in the main engine of the vessel suffered damages and strain of the heads of a valve due to its reparation during a previous renewal process. (( such process was carried out by the Defendant Company, Goltens Dubai)).

This maritime technical report came in the fifth item thereof "conclusions" to the conclusions stated in details below:

5 – 1 : Damage to the Number 6 cylinder occurred as a result of fragmentation of one of the valves.

5 – 2 : The damage to the valves was so severe that it was not possible to identify the location of the initial fracture, or the fracture mode.

5 – 3 : The valves had been previously refurbished, which included extensive weld repairs to the valve heads.

5 – 4 : Weld repair of valves is not permitted by the engine manufacturer as it carries an unacceptable risk of causing fatigue fracture of the valve.

5 – 5 : It is likely that the initial valve fracture occurred as a result of fatigue which was initiated by a weld repair that had previously been carried out on it during refurbishment.

\* Consequently, it is evident that the Defendant , Goltens Company Limited "Dubai Branch" is the Company performed the maintenance works for the vessel's engine and reformatted and rehabilitated the engine's valves using a method unacceptable by the engine manufacturer, i.e. to fix the valves by welding. (( this matter was confirmed by the technical report – the Defendant Company used the welding. Thus, the engine's valves were damaged substantially)) .

مـجـمـوعـة الـوصـل الـدولـيـة مـحـامـون ومـسـتـشـارون قـانـونـيـون
Alwasel International Group Advocates & Legal Consultants

**(Vide Exhibit no. "8" of the Plaintiff's attached docket of exhibits"**

\* The Plaintiff and the Defendant exchanged the correspondences regarding such damages suffered by the Plaintiff's three vessels. <u>The Plaintiff requested from the Defendant to attend the inspections and tests on the heads of the cylinders and valves that were readapted and rehabilitated by the same. (( i.e. by the Defendant Company)) in an independent laboratory in Singapore called (( Singapore Test Services STS Pte Limited)). It also requested to name the party that will attend on its part "that is, on the part of the Defendant". However, the Defendant Company refused to attend after it had agreed with the Plaintiff to make this technical inspection required for the damaged cylinders and valves in an independent technical laboratory in Singapore.</u>

\* <u>The Plaintiff addressed the Defendant on 1/6/2010 by an-email related to this subject. It informed the Defendant that unless it receives a confirmation on the attendance of the inspection by 7/6/2010, the Defendant will be deemed by the Plaintiff as unwilling to attend the joint inspection to be done in the said independent laboratory for the damaged cylinders and valves in Singapore.</u>

**((Vide check the correspondences between Plaintiff and Defendant regarding the subject above by email in exhibit no. "9" of the Plaintiff's attached docket of exhibits))**

\* the legal attorneys of the Plaintiff Company in the Emirate of Dubai, M/s Ince and Co addressed the legal attorneys of the Defendant Company, M/s Al Tamimi and Company in accordance with the messages exchanged between them by email and fax about the subject of the dispute at hand showing the circumstances and claims of the Plaintiff. It also submitted the exhibits indicating the validity of the Plaintiff Company claims against the Defendant Company with this effect. They replied that they suggest to hold a meeting and to claim the exhibits that they were provided with by the Plaintiff Company's attorneys.

U.10.0574.00 25123986 v2

مجموعة الوصل الدولية محامون ومستشارون قانونيون
Alwasel International Group Advocates & Legal Consultants

### ((Vide check the correspondences between Plaintiff and Defendant regarding the subject above by email in exhibit no. "10" of the Plaintiff's attached docket of exhibits))

* on 20/9/2010, the Plaintifflegal attorneys of the Plaintiff served a legal notice to the Defendant Company regarding the subject of the judicial dispute at hand and the damages and losses incurred by the Plaintiff Company due to the Plaintiff Company due to the failures and damages of the valves, the maintenance, readjustment and rehabilitation of which were done by Defendant Company in the three vessels owned by the Plaintiff Company with this effect, especially the correspondences in June 2010. They indicated that the Defendant Company refuses to attend the inspection of the valves in the independent technical laboratory in Singapore in June 2010. They demanded the Defendant Company to pay all the funds representing the costs of repairing such valves as well as the funds that had been already paid by the Plaintiff Company to the Defendant Company in consideration of the valves maintenance and rehabilitation, in addition to the costs incurred by the Plaintiff Company as a result of its three vessels stop for reparation and missing the opportunity to charter the same to the Plaintiff Company clients due to its failure as a result of the works of the Defendant Company.

### ((Vide check the exhibit no. "11" of the Plaintiff's attached docket of exhibits)).

* As the Plaintiff Company incurred huge sums such as the expenses and losses caused by the works of maintenance done by the Defendant to the engines of the three vessel owned by the Plaintiff, the rehabilitation of the valves of the engines of the said three vessels. It was evident that such performance had not been performed properly technically. It resulted in a extensive damages to the engines of the said vessels as well as the huge losses it incurred due to the lack of income that it was expected to generate by chartering its vessels to its clients in the global markets. The three vessels had to stop to repair the damages caused to its engines and the valves of its engines as a result of the

U.10.0674.00 25123986 v2

Alwasl International Group Advocates & Legal Consultants

maintenance done by the Defendant. The funds incurred are described as follows:

1- The amount of US$ 2,588,097/40 representing the costs of repairing the three vessels as a result of the damages to the valves of the engines maintained by the Defendant Company.

**((Vide check the exhibit no. "12" of the Plaintiff's attached docket of exhibits)).**

2- The amount of US$ 810,014/88 representing the funds missed by the Defendant Company as returns due the stop of chartering the vessels due to its stop for repairing the damages caused by the Defendant Company to the vessels.

**((Vide check the exhibit no. "13" of the Plaintiff's attached docket of exhibits)).**

3- The amount of US$ 267,780 /00 representing the funds paid by the Plaintiff Company to the Defendant Company in consideration of the maintenance works by the Defendant for the engines and valves of its three vessels. Such maintenance caused the damages to the three vessels. The said amount was paid by another Company named Dobson Fleet Management.

**((Vide check the exhibit no. "14" of the Plaintiff's attached docket of exhibits))**

4- The amount of US$ 4,500,000 representing the funds lost by the Plaintiff Company being the future rental value in consideration of chartering the vessels. The Plaintiff Company lost the same as the owner of the three vessels,

The total sums of these amounts are US$ 8,165,892/28

As it is established at law according to the provision of article 282 of the Civil Transactions Law, a Federal Law no. 5 of 1985 as amended that " Any harm done to another shall render the actor, even though not a person of discretion, liable to make good the harm".

Also it decided at law according to the provision of article 283 thereof that:

(1) Harm may be direct or consequential.

(2) If the harm is direct, it must unconditionally be made good, and if it is consequential there must be a wrongful or deliberate element and the act must have led to the damage.

* Moreover, it is established according to the court judgments of the High Courts in UAE that: "any harm caused to a third party whether by actual act or by an omission obliges its original perpetrator to make good for the damages suffered due to the same – challenge for cassation no 515 of 1999 "rights", hearing of 10/6/2000, Dubai Court of Cassation)).

Also, ((it is stipulated to be judged in favor of compensation for the damages that the damages shall be true, that is, it must have already occurred or it will definitely occur, Objection no. 434 of 1999, hearing of 2/11/1999 Abu Dhabi Supreme Federal Court))

**In addition**, ((the harm is an element of the liability, so that it must be substantiated as a condition to be judged in favor of compensation, objection no. 267 of 1999, hearing of 20/6/1999, Abu Dhabi Supreme Federal Court)).

**Also,** " it is intended by direct included in the text of article 283 of the Civil Transactions Law requiring unconditional compensation is, according to the Islamic Jurisprudence from which the legislator derived this text, every action caused harm by itself and had been a reason thereto, and no other action was in between the action and the damage. It is meant by the causation that it was

the reason thereof and was not the damage itself, challenge for cassation no 57 of 1997 "rights", hearing of 11/10/1997, Dubai Court of Cassation)).

**Also,** ((the harm by causation is the harm that was not caused by the act itself, rather it was a reason thereto, i.e. to commit an act in something causing a harm to another thing, the doer shall be thereby liable for the harm and shall be ordered to make good, if it is evident that he intended to cause harm or committed an act unrightfully or his act led to the harm, challenge for cassation no 515 of 1999 "rights", hearing of 10/6/2000, Dubai Court of Cassation)).

\* As it is confirmed according to the papers and exhibits in the case and the specialized maritime technical reports provided by the Plaintiff herewith the papers and exhibits of its claim, that the Defendant Company caused the occurrence of the damages suffered by the three vessels of the Plaintiff such as the damages suffered by the engines and the damage of the engine cylinders and valves. These valves were renewed as a part of a wide process of reparation for the heads of the valves **by the Defendant Company. It, the Defendant, used the reparation by welding even though the manufacturer does not allow the reparation of the valves by welding as it holds an unacceptable percentage of risk that may cause a strain break in the valves.**

In addition, the Defendant received financial funds consideration from the Plaintiff in return for the works of maintenance, reparation and rehabilitation of the engine valves of the Plaintiff's three vessels incurring the Plaintiff Company, the owner of the same, heavy losses as a result of the harms mentioned above in details, the matter enforcing the Plaintiff, since the law reserved its due rights accrued at the liability of the Defendant Company, to resort to the honorable court to request the following:

**Therefore,**

**First:** to register this case and then to serve it duly on the Defendant.

مجموعة التوصل الدولية محامون ومستشارون قانونيون
Alwasl International Group Advocates & Legal Consultants

**Second:** to rule to obligate the Defendant to pay to the Plaintiff the amount of US$ 8,165,892/28 (eight millions, one hundred sixty five thousand, eight hundred ninety two American dollar and twenty eight fills). This is equivalent to the amount of AED 30,050,483/59 (thirty millions, fifty thousand, four hundred eighty three dirhams and fifty nine fills) plus the legal interest on this amount at the rate of 12% as of the claim date until full payment.

**Third:** to obligate the Defendant to pay the fees, expenses and attorney's fees.

With reserving all the Plaintiff's other rights to claim the Defendant to pay any funds arises such as expenses and costs associated with the damages caused to the three vessel owned by the Plaintiff.

**With All Due Respect**

**Plaintiff's Attorneys**

Advocates: Abdul Aziz Abdullah M. Abdullah Al Hmadi, Abdurrahman Abdullah Saif Salim Khamis Al Nqbi, Mahmud Al Haj Abu Jreedah.

Alwasl International Group

(sealed and signed)

**Date 25/12/2011**

13                                                          U.10.0574.00 25123956 v2